Madden, Judge,
delivered the opinion of the court:
The plaintiff was an employee of the Panama Canal. During the period here in question, March 28, 1934, to August 31, 1939, he was, successively, operator or leverman, chief operator, and master, of the dredge Las Cruces, which was operated by the Government in the Canal. He was employed and paid on a monthly basis. He worked eight hours per day, six days per week. He claims that under Section 23 of the act of March 28, 1934, 48 Stat. 522, forty hours per week was set as the regular work period for his job, and payment of time and a half for overtime was directed, hence he should have been paid at the rate of time and a half for his sixth day of work in each week throughout the period.
Section 23 is as follows:
The weekly compensation, minus any general percentage reduction which may be prescribed by Act of Congress, for the several trades and occupations, which is set by wage boards or other wage-fixing authorities, shall be reestablished and maintained at rates not lower than necessary to restore the full weekly earnings of such employees in accordance with the full-time weekly earnings under the respective wage schedules in effect on June 1, 1932: Provided, That the regular hours of labor shall not be more than forty per week; and all overtime shall be compensated for at the rate of not less than time and one-half.
*251 On April 4, 1934, which was within a few days after Section 23 was enacted, the Governor of the Panama Canal sought the decision of the Comptroller General as to whether Section 23 was applicable to employees of the Panama Canal, and if so whether it required the payment of overtime to certain described classes of employees. See finding 16. The Comptroller General answered on April 12 that Section 23 was applicable to certain of the employees described, since their wages were set by wage boards or other wage-fixing authorities within the meaning of the section and that it was applicable to employees paid by the month as well as those paid by the hour. He made no direct answer to the question of overtime for monthly employees, but a negative answer can fairly be inferred from the following statement:[1]
You are advised, therefore, that employees of the classes numbered (1) and (2)[2] in the submission are subject to the provisions of section 23 of the act of March 28, 1934. As to class (2), however, no change in the monthly or annual rate of compensation other than that required to pay a rate not lower than the rate per annum or per month paid June 1, 1932, less any applicable percentage reductions, would be authorized. That is to say, they are to receive the same monthly or annual compensation although their regular hours of duty may be reduced.
The Governor thereafter attempted to save some money in spite of Section 23, by putting certain monthly paid employees on an hourly basis. He then divided the June 1, 1932 monthly salary by 224, the number of hours which, he estimated, they had been working per month, including 8 hours a day for six days a week, 16 hours for occasional overtime, and something more for occasional work on Sundays and holidays. According to this statement, they had been working 52 hours per week. Having thus computed their *252 hourly wages, he then added 20 percent to this hourly wage, so as to pay them the same for the new 40-hour week as they would have received before for a 48-hour week, though they had in fact been working, and had been paid for, many more than 48 hours, according to his computation of their previous hourly earnings. The computation is shown at page 168 of 14 Comp. Gen. The net result was to substantially reduce their monthly earnings. The employees complained, and the question was submitted by the Governor to the Comptroller General along with some related questions, and a request for reconsideration of his former decision. The Governor’s view as to the applicability of the 40-hour week to monthly employees is shown by his statement which was included in the submission to the Comptroller General:
(a) The former monthly rates of pay for electricians and other craftsmen in- operating positions included compensation for a definite amount of overtime service each month, which no longer can be worked under the new law. [14 Comp. Gen. at 168.]
The Comptroller General in reply reaffirmed his decision of April 12, and disapproved the recomputation of monthly wages described above. 14 Comp. Gen. 156, 164. In demonstrating the impropriety of subtracting that part of the former monthly salary which, the Governor said, had been included to compensate for overtime, the Comptroller General said, at 164:
* * * it is fundamental that a rate of compensation fixed by the month or year for full-time service is inclusive of any amount of overtime; that is, the compensation is for every day and every hour of the month or year whether or not service is actually rendered. * * *
At page 165, the Comptroller General said:
Referring to question no. 2, the procedure adopted changing the monthly rates to per hour rates, with a resulting deduction in weekly earnings, was not proper. As stated in decision of April 12, the proper procedure was to continue the payment of the same monthly rates of compensation even though there may have been a reduction in the number of hours per week and no overtime compensation is authorized. This is the gen *253 eral rule that has been adopted under the 40-hour week statutory provision for all employees paid on a monthly or annual basis to which the provision is applicable.
It appears from the above and from the rest of the statement of the Comptroller General that he decided that Section 23 applied to monthly employees who were artisans or mechanics, and that therefore their monthly salaries could not be reduced below the June 1, 1932, level, no matter how much their hours were reduced. He was not presented with the question as to whether they could be regularly worked more than 40 hours a week, since the Governor had taken the position that they could not, but he had advised the Governor in his April decision that Section 23 was applicable to them, and his discussion of the Governor’s attempted recom-putation assumes that their workweek was to be 40 hours, as Section 23 specifies. In one or perhaps two places in his discussion he observes that monthly employees should not be paid overtime.
It seems that with regard to the plaintiff, and, presumably, other employees similarly situated, the observation in the Comptroller General’s statement that monthly paid employees were not entitled to overtime was the part of the statement which the Governor made the most use of. He worked the plaintiff 48 hours a week and paid him no overtime. He could not have done this because he thought Section 23 was not applicable to the plaintiff. The Comptroller General had squarely held that it was applicable. He could not have done it because he thought the 40-hour-week limitation was not applicable to the plaintiff, though other parts of the section were. He had, in his submission of the question, stated that if the Comptroller General adhered to his decision of April 12, monthly employees could not be worked more than 40 hours a week. The Comptroller General’s language assumes that the 40-hour-week provision was applicable and that monthly employees would be worked only 40 hours a week. Thus in disregard of the advice which the Governor had asked and received, Section 23 was effectively flouted, and the Governor’s attempted economy, which, when presented under another guise, had been rejected by the Comptroller General, was accomplished by the expedient of disobeying *254 tbe 40-hour-week limitation of Section 23. The record does not show that the question of the legality of this expedient was ever presented to the Comptroller General.
We think that the Governor’s solution of the problem was a legally impossible one. Either Section 23 was applicable or it wasn’t. The Comptroller General held that it was. If it was, the plaintiff’s workweek should have been 40 hours, as the section said it should be, and as the Comptroller General assumed that it would be. If it still remained “fundamental,” in the face of the new statute, that a monthly employee’s monthly pay is “for every day and every hour of the month or year whether or not service is actually rendered,” as the Comptroller General had said in another connection, so that the plaintiff could not be paid for overtime, then he should not have been worked overtime, at least as a regular practice. The attempted combination of this “fundamental” doctrine with Section 23 made an impossible mixture which could not have been.intended by Congress. No ordinary rule of law or precept of a department remains fundamental after Congress has, by a statute, negatived it.
In what we have said so far, we have assumed, as the Comptroller General did, that Section 23 applied to employees of the Panama Canal, and to monthly employees. The Government denies both assumptions.
As to the first, the Government points out that Section 23 is applicable only to the situation of “the several trades and occupations” whose wages are “set by wage boards or other wage-fixing authorities.” Our findings 12 to 15 show that the wages of artisans and mechanics such as the plaintiff were set by the Governor of the Canal after recommenda-.. tions made by a wage board appointed for that purpose by the Governor. We think, as did the Comptroller General, that this prerequisite of the applicability of Section 23 was met. The Governor has so administered the law as to employees paid by the hour, since shortly after its enactment in 1934.
As to the second point, the Government urges vigorously that Section 23 was not intended by Congress to have, and consequently does not have, any application whatever to employees paid by the month, either in the Panama Canal or *255 elsewhere. In its brief and argument it presents items of legislative history and statements of departmental practice, which, it claims, support this view.
The most directly pertinent piece of legislative history is a statement made to the subcommittee of the Committee on Appropriations of the Senate[3] by Mr. Alif as, a representative of unions in the American Federation of Labor, “on behalf of the 75,000 or more per diem mechanics and workmen employed at the Navy yards, arsenals, the Panama Canal Zone, and other divisions of the Federal Service * * The bill before the committee was the Independent Offices Appropriation bill which proposed to restore the general 15 percent wage cut for federal employees which had been put into effect the previous year. Mr. Alifas urged that his constituents would not be made whole by a mere restoration of the percentage cut; that the departments employing them had further cut their pay by a system of regular lay-offs without pay which had reduced their workweek to 40 hours and their pay correspondingly. He presented a suggested draft of an amendment to accomplish his purpose, as follows:
Provided, That the rates of compensation for the several trades and occupations, which are set by wage boards or other wage-fixing authorities, shall be reestablished and maintained at rates not lower than the respective wage schedules in effect on June 1, 1932; and that the Navy Department and other departments and independent establishments of the Government are hereby directed to'restore to employees any reduction in pay which they have received since June 30,1932, in addition to the 15 percent congressional cut, without increasing the present hours of service; and that the respective departments and independent offices are hereby authorized to incur such deficiencies as may be necessary to put this provision into effect.
The committee did not adopt the suggested amendment.[4] But when the bill came to the floor of the Senate, Senator Thomas of Oklahoma, who was a member of the subcommittee, offered the amendment which became Section 23.[5] Such discussion as occurred on the floor of- the Senate and *256 the House throws little light on our problem as to whether the benefits of the section were to extend to monthly paid employees. No one suggested that it was not to do so. Senator Cutting, in debate on the bill, said that the bill was designed to do “in effect what the N. it. A. is trying to do, to pay the same amount of wages for shorter periods of labor.”[6] If any one had said, at that point in the debate, that a mechanic paid by the month was not to have his hours of labor reduced, it would have been hard to suggest a reason for such a discrimination. If the policy was to reduce hours without reducing pay, that policy would have been just as applicable to monthly paid employees as to those paid by the hour. Not a syllable in the text of Section 23, or a word in the debates in Congress, even suggests the distinction which the Government asks us to draw.
The presentation to us of the statement of Mr. Alifas before the subcommittee persuades us that it is quite likely that the idea of Section 23 was originated by the union leaders of the per diem employees for whom he spoke, and that it may well have been their agitation which caused the section to be inserted in the law. But the benefits of a statute, general in terms, and whose policy is applicable to others, cannot be made the exclusive property of the persons or organizations who agitate for and bring about its passage.
The need of monthly paid employees for the protection of Section 23 soon became apparent. As we have seen, as soon as the Governor of the Canal was advised by the Comptroller General that the 40-hour-week provision of Section 23 was applicable to monthly employees, he cut their hours, and cut their wages below the 1932 level. It was their complaint concerning this wage cut which caused the second submission of the question to the Comptroller General. He held that Section 23 not only required that employees who had had their weekly wages reduced by reducing their hours, should have their weekly wages restored to the 1932 level, but that employees who had not had their weekly wages cut, since they were paid by the month and were worked 52 hours a week, should not have them cut, after the enactment of Section 23, by the reduction of their work week to 40 hours.
*257 According to the Government’s contention, the Governor was right. Section 23 was inapplicable, and he could have maintained the 52-hour work week at the same pay, or could have cut it with a corresponding reduction in pay. The result, then, of an act of Congress, which on its face was just as applicable to monthly employees as to any other employees, and which said that the weekly wages of employees “shall be reestablished and maintained at rates not lower than” the 1932 rates would have been that monthly employees would have had their wages cut below the 1932 level for the first time, while other employees were having theirs restored to the 1932 level. That Congress could have sub silentio entertained any such contradictory intention seems incredible. The Comptroller General ruled that the cut in pay was “in contravention of the plain terms of the statute.” Thereupon the Governor abandoned that scheme for balancing his budget, but accomplished the same purpose by taking advantage of the Comptroller General’s observation that if he worked monthly employees more than the statutory maximum hours, he still would not have to pay them for the extra work.
' It is urged that there had been, before the enactment of Section 23, no reduction in the wages of monthly employees other than the general percentage reduction and that therefore the section-, except for the proviso, could not have been intended to have any application to such employees. We do not think that it may be assumed that in all the departments having monthly paid mechanical employees there had been no furloughs without pay or other arrangements to spread, the work and at the same time keep the pay roll within the available funds. The Governor of the Panama Canal had, it seems, met the problem by increasing the hours of those monthly employees who were retained on the pay roll. Other administrators may have solved it by spreading the work in some such way as that suggested above. As we have seen, the Governor proposed, after Section 23 was enacted, to put his monthly employees on an hourly basis for a shorter week and thus reduce their pay. If the Government’s position that Section 23 was inapplicable to them is correct, he could lawfully have done so. The Comptroller General ruled that he could not, and for that reason only he did not. We think, *258 therefore, that there may well have been occasion for the direct application of the first part of Section 23, as well as the proviso, to monthly employees.
The Government points out that in July 1937, after three years of administration of Section 23 as not requiring overtime pay to be paid to monthly employees, Congress amended Section 81 of Title 2 of the Canal Zone Code (50 Stat. 486, 487), so that, while it still lodged in the President the power to fix the compensation of employees until Congress should do so, it contained the following new language:
And -provided further that nothing contained in this section shall affect the application to employees of the Panama Canal of the provisions of section 23 * * * [of the Act of 1934].
The Government contends that Congress in 1937 presumably was aware of the whole previous history of legislation and executive orders, “the consistent administrative practice of 23 years, including 3 after the passage of Section 23, the Comptroller General’s decision on Section 23, and Section 23 itself.”
The administrative practice for the first 20 of the 23 years, i. e., down to the enactment of Section 23 in 1934, would have been of no significance even if Congress had been aware of it. Until 1934 the President had, under the 1912 act, the power to fix compensation and hours of work. He had ordered that monthly employees should not receive overtime, and that settled that question until Congress acted. Administrative interpretation was of course in accord with the President’s plain order, and proves nothing about what Congress meant by what it did later. In 1934 Congress, in enacting Section 23, provided for overtime for employees in terms that, on their face, did not exclude monthly employees. In 1937 Congress reaffirmed both the President’s general power to fix compensation and conditions of employment, and the rights of employees under Section 23. If, as we think, its intention in 1934 in enacting Section 23 had been to give overtime to monthly employees such as plaintiff, and it had known in 1937, as the Government would have us presume, that that intention had been frustrated by administrative interpretation, it might plausibly be argued that *259 its proviso reaffirming Section 23 was intended to negative, rather than to ratify, that administrative interpretation.
The proposed amendment of Section 81 of the Canal Zone Code was first introduced in the Seventy-fourth Congress[7] for the purpose of confirming the President’s authority to provide for the commutation of leave.[8] The proviso quoted above preserving the effect of Section 23 was attached when the amendment was reintroduced in the Seventy-fifth Congress.[9] The Government quotes letters to the Congressional Committees from the Governor of the Canal and the Secretary of War saying that Section 23 was “general legislation of the United States which is not applicable to American employees of the Canal generally and affects only a certain number of employees in particular groups by reason of a ruling to that effect by the Comptroller General.” These statements as to the limited effect of Section 23 were obviously true, without regard to the problem here in question. None of the employees in the classified service were intended to be covered by it. The ruling of the Comptroller General was not cited, nor its purport stated. The letters therefore contained nothing which would have suggested to Congress that the Governor, having been advised by the Comptroller General that Section 23 Was partly applicable and partly nonapplicable to monthly paid employees such as the plaintiff, was, in his administration, ignoring the section completely. If Congressmen had searched out and read the decisions of the Comptroller General they still would have found no intimation that the Governor had, in disregard of those decisions, been continuing to work monthly employees a regular workweek of 48 hours in the face of a statute limiting the workweek to 40 hours. The Government points out that the amendment to Section 81 saving the effect of Section 23 was drafted by the Governor of the Canal. He knew how he had been administering Section 23, but how any Congressman could have guessed it, we cannot see. In these circumstances, the 1937 act seems to us to throw no light upon our problem, *260 and we treat its proviso as being merely a reaffirmation of Section 23 of the 1934 act, with that section’s original meaning.
The Government urges that, in addition to the administrative practice of the Governor of the Canal, which was, as we have seen, to disregard the provisions of the law relating to the 40-hour week and overtime pay, the War and Navy Departments similarly administered the statute, and that this consistent administration gives it the meaning urged by the Government. The evidence of this departmental administration consists of letters from the War and Navy Departments to counsel for the Panama Canal, dated in November 1943. The War Department letter says that per annum and monthly employees have not been paid overtime under Section 23. The Navy Department letter says that per annum employees have not been so paid. Neither letter says that such employees have in fact been worked overtime, either regularly, as the plaintiff was, or at all.
Some further light on what the probable administrative practice of the Navy*Department has been, is had from reading the questions submitted by the Secretary of the Navy to the Comptroller General on April 6,1934, a few days after the enactment of Section 23, and that official’s answer.[10] The Secretary’s sixth question was whether per-annum or per-month employees who worked in excess of 40 hours a week “because of an extraordinary emergency” would be entitled to overtime pay under Section 23. The Comptroller General said they would not, and referred the Secretary to his decision of a few days earlier relating to employees of the Government Printing Office. In that decision[11] he had said, at page 269:
* * * the regular hours of work of per annum employees within the terms of Section 23 of the act of March 28,1934, are required to be fixed at not to exceed 40 per week * * *
In answer to question six of the Public Printer, as to whether per annum employees were entitled to overtime compensation, the Comptroller General said, 13 Comp. Gen., at page 270:
*261 Question 6 is answered in the negative. The term “overtime” has never been applicable to employees paid on an annual basis and there is no purpose or intent shown by section 23 of the act of March 28, 1934, to extend the right to overtime compensation to employees paid on an annual basis who may be required to work more than their regular tour of duty of 40 hours per week.
It appears then that the Secretary of the Navy never even raised the question as to whether he could work per-annum and per-month employees more than 40 hours a week without extra compensation except in the case of “an extraordinary emergency.” In answer he was told that the regular hours of work of such employees were, by Section 23, “required to be fixed at not to exceed 40 per week,” but that overtime need not be paid for overtime work “because of an extraordinary emergency.” Whether or how often extraordinary emergencies arose before the overtime statutes were, in the war emergency period, more explicitly made applicable to monthly employees, we do not know. We have no reason to suppose that the Secretary of the Navy or the Secretary of War, like the Governor of the Panama Canal, disregarded the 40-hour-week limitation and habitually worked monthly employees overtime without compensation.
So far as the administration of Section 23 has been disclosed to us, it would seem to have been that monthly paid mechanical employees in the Navy and War Departments, the Government Printing Office, and in any other agency of the Government which had such employees, except the Panama Canal, had their hours of work reduced to 40 without any cut in their pay. The Comptroller General had ruled that that was their right, and we have no evidence whatever that that ruling was not followed. The Government contends that the administrative practice was that Section 23 was not applicable to monthly employees. We think that all the evidence there is, and the fair inferences that may be drawn from it, show exactly the opposite. There is not even any evidence that the Governor of the Panama Canal ever again entertained the thought, after the Comptroller General’s rulings in 1934, that Section 23 was not applicable to *262 monthly employees. All that appears is that he regarded as providential, and took full advantage of, the Comptroller General’s subordinate ruling that, even though he did not obey the law, he would not have to pay overtime.
In view of what we have supposed to have been the practices of the other departments, the plaintiff and other Canal employees similarly situated were the victims of gross discrimination. Monthly employees in other departments kept • their former pay, plus the restoration of the fifteen percent cut, though they worked only 40 hours. The plaintiff had to work 48 hours to keep his former pay, plus the restoration. There is nothing in the doctrine that administration may give meaning to a statute which permits one administrator, of several who have applied the law, to give it a meaning essentially 'different from that given by all the others, and thus in effect make a special and peculiar law applicable only to those persons who have the misfortune to come within the area of his administration. Section 28 gave the same rights to employees of the Canal as it gave to employees in the other departments.
To justify the Governor one would have to rely on the ruling of the Comptroller General to the effect that though Section 28 was applicable and limited the work week to 40 hours, yet a longer work week required no additional compensation. In fairness to the Comptroller General, it should be repeated that, so far as appears, the Governor’s interpretation of his ruling as permitting habitual violation of the law with impunity, was never presented to him for comment. That ruling, at least as thus interpreted, is without justification in the text of the statute, without logic, and productive of the sort of administrative confusion and discrimination which here confronts us.
What the intended beneficiaries of the statute, the employees, would get under such a doctrine, would, as it has done in this case, range all the way from nothing, in the Panama Canal employment, to much, in the Navy and other departments, where they seem to have had a 40-hour week unless it was extended because of an extraordinary emergency.
The Government cites numerous instances of legislation since the beginning of the war emergency relating to com *263 pensation for overtime-in Government employment, concerning which, it says, the reports and debates show that those Congressmen who had charge of the legislation thought that monthly and annual employees had not previously been entitled to overtime compensation. We suppose that that was the impression of informed persons. It should have been, since in fact such employees were not getting overtime compensation, because the Comptroller General’s rulings had denied it to them. For Congress to have excluded such employees from the new legislation, and to have relegated them to lawsuits to reverse the Comptroller General’s rulings concerning the old legislation, would have meant that these employees would probably have left the Government’s employment, outside employment at high wages being easy to obtain. It is dangerous doctrine to attribute to legislation which explicitly resolves, for the future, a doubtful question, an intention on the part of the legislature to adopt, and make retroactive, a previous administrative interpretation of the doubtful language. A legislature should feel free to make clear law for the future without danger that it may, thereby, destroy rights which have properly accrued or create rights which have not properly accrued under the unclear, or misinterpreted, language, of the former statute. We are not persuaded, therefore, that Congress, by the recent actions to which we are referred, intended to ratify and make retroactive the Comptroller General’s interpretation of Section 23 as to overtime for monthly employees.
The Government urges that, even if the plaintiff is entitled to recover overtime, his proposed computation of the amount due him is excessive. The plaintiff’s method of computation was as follows: he multiplied his monthly salary by 12 and divided that product by 52 to determine his weekly salary. He divided that weekly salary by 5 to ascertain his daily pay for an 8-hour day, which was what he worked in a 40-hour week, which was what Section 23 called for. Taking this daily wage, he added one-half to it, since Section 23 called for time and a half for overtime, and multiplied that sum by the number of times he had worked a sixth day in a week. By that' computation, the plaintiff claims, he will be *264 correctly paid time and one-half for his overtime, or sixth day, work.
The Government contends, on the other hand, that the plaintiff’s monthly pay was for every day in the month, since all of his time was hired; that his daily pay should be found to be one-thirtieth of his monthly pay, and that therefore he has in fact been paid straight time, not only for the 5 days or 40 hours that he should have worked under Section 23, but also for the sixth day that he was required to work and for which he claims overtime. On that basis, the Government urges that the plaintiff is entitled only to the additional half pay for the sixth day of each week. But if we adopt this method of computation, it seems that the plaintiff has already been overpaid, for he has also been paid straight time for the seventh day of each week, when he only worked 6 days, and therefore has received more time and one-half for the sixth day.
The Government suggests, in the alternative, that the plaintiff’s monthly pay should be divided by 26, the number of days on which he was actually required to work; that again he has been paid for all the days, 26, that he did work, and is therefore entitled only to an additional half pay for the days which he worked as sixth days in a week, he already having received his regular pay for those sixth days.
We think the Government’s contentions are not valid. When the plaintiff was employed at a monthly salary and was assigned to work 8 hours a day while Section 23 which limited his workweek to 40 hours was in force, we think that he was, in legal effect, hired for a 5-day week, and that his daily wage, since it has become necessary to determine it, must be determined on that basis. It follows that he has not been paid at all for the sixth day of each week, and that he may recover straight time, and one-half time in addition, for the sixth day. We think the plaintiff’s method of computation accomplishes that result.
We are aware that the act of October 21, 1940,[12] provided:
* * * in determining the overtime compensation of the foregoing per annum Government employees the pay for one day shall be considered to be one three-hundred-and-sixtieth of their respective per annum salaries.
*265 The House Committee on Naval Affairs said, in its report[13] on the bill which became the act of June 28,1940, the first of the emergency overtime Acts:
Overtime pay has heretofore not been allowed to any per annum employees of the Government, although overtime pay at time and one-half is allowed to per diem employees. * * *
In order to calculate the amount of overtime pay for per annum employees it is necessary to specify in the act the corresponding daily pay. This has been done in accordance with long-standing Government custom by fixing it at one three-hundred-and-sixtieth of the annual salary on the customary basis of 12 months to a year and 30 days to a month.
The statements in the two paragraphs of this report seem inconsistent, in that if no overtime had previously been paid to per annum employees, it is not clear how there could have been a “long standing Government custom” as to the method of computing it. The custom must have related to computation of daily pay for some other purpose, of which we are not advised. We think therefore, that the specific statutory method of computing overtime, enacted for the first time in 1940, should not control the computation in this case.
The Government urges that, if Section 23 is made applicable to the plaintiff’s employment, it brings that section into conflict with Section 4 of the Panama Canal Act of August 24,1912,31 Stat. 560, 569.[14] That section provides that wages of Canal employees shall not exceed by more than 25 percent the wages paid for the same or similar services to persons employed by the Government in the continental United States. The Government says that the only Government employment in the United States to which the plaintiff’s employment was comparable was that in the Engineer Corps, U. S. Army, and that Section 23 was not applicable to that employment.[15] We do net know what the pay of Engineer Corps’ employees was during the period here involved, nor how many hours they worked per week. In any event, we do not suppose that Congress intended, in enacting Section *266 23, to wholly deny its benefits to particular employees, or particular groups of employees, because the effect of its application would be to increase their wages, by some amount beyond the 25 percent differential. The two sections should have been reconciled, if necessary, by a reduction of the plaintiff’s wages, and not by an administrative nullification of Section 23. It is not necessary for us to decide, and we do not decide, which of the sections would govern if a real conflict between them were presented.
The plaintiff is entitled to recover $5,157.57. It is so ordered..
Littleton, Judge; and Whaley, Chief Justice, concur.

 The decision of April 12 is quoted in the body of a later decision, 14 Comp. Gen. at 158.

 In the question submitted by the Governor, hourly paid artisan and mechanical employees were classified as (1) and monthly paid employees of the same trades were classified as (2).
In other decisions of the Comptroller General, given In response to inquiries from the Public Printer and the Secretary of the Navy, the Comptroller General was more explicit on the question of overtime for monthly employees, 13 Comp. Gen. 265, 270; Id. 277, 280. These decisions are referred to hereinafter.

 Seventy-third Congress, Second Session, Hearings on H. R. 6663, pp. 59 — 61.

 Senate Rep. No. 294, 73d Cong., 2d Sess.

 Cong. Rec., Vol. 78, Part 3, p. 2977, 73d Cong., 2d Sess.

 Cong. Rec., Vol. 78, Part 5, p. 5574, 73a Cong., 2d Sess.

 H. R. 6719, 74th Cong., 1st Sess.

 S. Rept. No. 1821, 74th Cong., 2d Sess., p. 2, which incorporates H. Rept. No. 744, 74th Cong., 1st Sess., on the purposes and effects of the proposed amendments of the Canal Zone Code.

 H. R. 6144, 76th Cong., 1st Sess.

 13 Comp. Gen. 277.

 13 Comp. Gen. 265.

 54 Stat. 1205, terminated June 30, 1942.

 H. Rept. No. 2257, 76th Cong., 33 Sess. pp. 3-4.

 The act of June 19, 1934, 48 Stat. 1122, enacted the Canal Zone Code, containing the same provision.

 Comp. Gen. 486; 14 Comp. Gen. 156, 162.