CONN v. UNITED STATES.

FLYNT v. SAME.

NELSON v. SAME.

Nos. 46485, 46490, 46492.

Court of Claims.

Dec. 2, 1946.

Frederick Schwertner, of Washington, D. C., (William Estopinal, of Gulfport, Miss., on the brief), for plaintiffs.

Kendall M. Barnes, of New York City, and John F. Sonnett, Asst. Atty. Gen., for the defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

LITTLETON, Judge, delivered the opinion of the court:

These cases involve claims by plaintiffs for overtime compensation in addition to the amounts of overtime pay allowed and paid to them by the War Department under the overtime pay statutes of December 22, 1942, 56 Stat. 1068, 5 U.S.C.A. §§ 26a note, 29 note, and May 7, 1943, 57 Stat. 75, 50 U.S.C.A. Appendix, §§ 1401–1415, and the regulations made by the President, the Civil Service Commission and the Secretary of War. The claims cover certain periods between December 1, 1942, the effective date of the Overtime Pay Act (Joint Resolution 170), of December 22, 1942, supra, and June 30, 1945. The claim of Albert F. Conn is for the periods December 1, 1942 to June 30, 1943, and July 1, 1944 to June 30, 1945; the claim of Robert D. Flynt is for the period July 1, 1944 to June 30, 1945; and the claim of Willie E. Nelson is for the period July 1, 1944 to June 30, 1945.

Prior to the approval of the act of December 22, 1942 (sometimes referred to as Senate Joint Resolution 170 and as Public Law No. 821), the existing pay statutes did not grant the right to overtime pay to civilian employees such as plaintiffs.

Plaintiffs were employed and held positions as civilian firefighters at the U. S. Army Air Base, at Gulfport, Mississippi. Their salaries were fixed on an annual basis. Conn was employed September 24, 1942; Flynt was employed February 17, 1944; and Nelson was employed July 17, 1943. They held such positions continuously to and including June 30, 1945. During the period of one year, July 1, 1943 to June 30, 1944, inclusive, firefighters at the Gulfport Air Base were assigned to regular tours of duty of 8 hours a day for 6 days each week during all of which time they were engaged in work, and were paid overtime on that basis at time and one-half of their hourly rate of pay, determined as specified in the existing statute and regulations.

During the periods covered by the claims for additional overtime pay the War Department used the two-platoon system for civilian fire fighting crews at the Gulfport Air Base, which consisted of regular scheduled tours of duty of 24 hours on duty, followed by 24 hours off duty. Two crews of 24 men each were employed at station No. 5 where plaintiffs were employed. During the periods involved plaintiffs were working under this system and their regular scheduled tours of duty totaled 168 hours in each biweekly period or an average of 84 hours per week.

Under the evidence it is clear that the time covered by plaintiffs' scheduled tours of duty of 24 hours each was not all devoted to actual work, and it is equally clear that it was not supposed that plaintiffs should or would devote any more of the time covered by each tour of duty to actual work than was necessary for the performance of certain routine duties assigned to them and responding to any and all fire or distress alarms. The period of 8 hours designated for rest and sleep was uniform in each tour except when interrupted by assignment of men to certain routine duties; by fire drills and by actual fire alarms to which the men had to respond and to engage in actual work until the fire danger was over. These interruptions in the rest period were irregular and when such interruptions occurred the men were given additional time and allowed to sleep later in the morning. The assignments to the performance of actual work on routine duties were, on the average, about 8 hours and were more or less uniform for all or most of the men. The remaining time during each tour of duty was spent in waiting, in readiness, to respond to any fire or distress alarm sent to plaintiffs' station. Plaintiffs testified that they did not sleep more than 4½ hours during each of the designated periods for rest and sleep on account of the noise made by airplanes and the mechanics engaged in repairing planes near the fire station, and that they did not consume more than 15 minutes in eating each of the two meals during each tour of duty; but we think these facts, even if true, are immaterial to the question as to whether the statutes intended that employees, having assignments such as those given plaintiffs, should be paid overtime compensation at time and one-half or additional compensation in lieu of overtime compensation. The proof shows that less than one-half of the remaining 8 hours in each tour of duty (after deducting the 16 hours for rest and sleep and the average time spent in the performance of routine duties) was spent in actual work of responding to calls. On the whole, therefore, as nearly as can be determined, plaintiffs devoted about 38½ hours to actual work each week out of their 24-hour tours of duty, as explained below.

During each period of two weeks each of the plaintiffs had seven 24-hour tours of duty which equaled 168 hours. Of this biweekly tour of duty of 168 hours, 56 hours were spent by plaintiffs in active work on routine duties, i.e., an average of 8 hours out of each of the 7 tours of 24 hours each. Plaintiffs were allowed, in addition, at least 8 hours out of each tour of 24 hours for rest and sleep, which amounted to 56 hours out of the 7 biweekly tours of duty, and they were allowed time for two meals, lunch and breakfast, during each tour of duty. The 56 hours spent in active work on routine duties plus the 56 hours for rest and sleep, allowed from 10 p. m. to 6 a. m. each day during the 7 tours, equaled 112 hours biweekly. The deduction of the 112 hours from the maximum of 168 hours for each two weeks' period, leaves 56 hours in each two weeks' period during which plaintiffs were waiting, or were engaged in actual work of fighting fires or responding to fire calls and standing by at the runways. The record shows that less than one-half of this last mentioned period of 56 hours was spent in actual work of fighting fires and in responding to alarms or calls. It is, therefore, correct to conclude, in view of the evidence which shows that each of plaintiffs spent more time waiting for fire alarms than in actual work of responding to alarms and fighting fires, that each plaintiff spent approximately 5 hours waiting and 3 hours actually working in responding to alarms during each of the seven 24-hour tours of duty. There was, therefore, a total of about 21 hours out of this period of 56 hours when plaintiffs were actually working in each biweekly period. The addition of this period of 21 hours spent in active work to the 56 hours spent on an average on active work in the performance of routine duties during such biweekly period, gives a total of 77 hours during which plaintiffs were actually working in each biweekly period. This shows that plaintiffs were actually working approximately 38½ hours during each week while on their tours of duty of 24 hours on duty and 24 hours off duty.

Plaintiffs base their claims for additional overtime compensation at time and

one-half under the act of December 22, 1942, supra, and the act of May 7, 1943, on the contention "that the entire 24 consecutive hours on duty under the facts and circumstances of these cases were hours of employment" for which they were entitled to receive overtime pay for the number of hours of such scheduled tours of duty in each week in excess of 40 hours. Plaintiffs insist that at no time were their "hours of duty" within the meaning of the statutes, intermittent or irregular, and that the regulations, in effect from December 1, 1942 to December 31, 1944, which classified them as employees whose hours of work were intermittent and irregular, and the regulations, in effect from January 1, 1945 to June 30, 1945, in which plaintiffs were classified as employees having administrative workweeks of 56 hours each for overtime pay purposes, were unauthorized and, therefore, invalid under the statutes.

As to the total amounts of additional overtime to which plaintiffs claim they are entitled for the total number of hours of their tours of duty in excess of 40 hours per week, plaintiffs claim in the alternative. They say, first, in reliance on Townsley v. United States, 101 C.Cl. 237, that the correct method of ascertaining the overtime compensation is to divide the basic annual compensation by 52 to ascertain the weekly compensation, and divide the result by 40 to ascertain the regular hourly rate, which is to be multiplied by 1½ to arrive at the overtime hourly rate, which is the equivalent of dividing the basic annual compensation by 2,080 to ascertain the regular hourly rate, and that plaintiff Conn is entitled to recover $3,526.35 for the periods involved in his claim; plaintiff Flynt, $1,971.78; and plaintiff Nelson, $1,765.24. Secondly, plaintiffs say that if the Government's view as to the method of calculation of the daily and hourly rate is correct, and it is necessary to divide the basic annual compensation by 360 to ascertain the daily rate and divide the daily rate by 8 to obtain the regular hourly rate, which, as plaintiffs contend, is to be multiplied by 1½ to arrive at the overtime hourly rate, then plaintiff Conn is entitled to recover $2,344.91; plaintiff Flynt, $1,284.82; and plaintiff Nelson, $1,142.44, for the excess hours on duty over 40 per administrative workweek.

Under the terms of the act of 1942, the act of 1943, and regulations issued thereunder, providing for overtime pay at time and one-half in certain circumstances and additional compensation in lieu of overtime in certain cases, we are of opinion that plaintiffs are not entitled to recover overtime compensation in excess of the amounts which have been allowed and paid to them for the periods involved.

The Congress by certain acts of June 28, 1940, 50 U.S.C.A.Appendix, § 1151 et seq., and October 21, 1940, and June 3, 1941, 5 U.S.C.A. § 29 note, made provision for the payment of overtime compensation to certain specified classes of employees (not including employees such as plaintiffs) in the Navy Department, the Coast Guard, the War Department, and the Panama Canal, for "employment in excess of forty hours in any administrative workweek computed at a rate not less than one and one-half times the regular rate." These acts, which authorized regulations in regard to hours of work and compensation for overtime, contained the further provision that "in determining the overtime compensation of the foregoing per annum Government employees the pay for one day shall be considered to be one three-hundred-and-sixtieth of their respective per annum salaries." The last above quoted provision was by reference carried into Senate Joint Resolution 170, approved December 22, 1942, 56 Stat. 1068, and the War Overtime Pay Act, approved May 7, 1943, 57 Stat. 75.

Plaintiffs contend, and their claims for additional overtime are primarily based upon this contention, that the first above quoted provision from the earlier acts of 1940 and 1941 for payment of overtime at time and one-half for "employment in excess of forty hours in any administrative workweek" was also by reference carried into the Joint Resolution 170 of December 22, 1942 and the War Overtime Pay Act of May 1, 1943, and, therefore, the entire time covered by the regular tours of duty of plaintiffs of 24 hours each, from 6 p. m. to 6 p. m. the following day, followed by 24 hours off duty, or 84 hours a week, were

hours of employment within the intent and meaning of Joint Resolution 170 of December 22, 1942 and the act of May 7, 1943, for which they were entitled to overtime pay at time and one-half per hour for the total number of hours on duty in excess of 40 hours per week.

In addition plaintiffs rely upon the decisions in Armour & Co. v. Wantock, 323 U.S. 126, 127, 128, 132–134, 65 S.Ct. 165, 89 L.Ed. 118, and Skidmore v. Swift & Co., 323 U.S. 134, 135–137, 65 S.Ct. 161, 89 L. Ed. 124, decided under Section 7 of the Fair Labor Standards Act of 1938, 52 Stat. 1060, 1063, as amended by the Act of October 29, 1941, 55 Stat. 756, 29 U.S.C.A. § 207.

We agree with plaintiffs that Joint Resolution 170 of December 22, 1942, supra, by extending the expiration date of the earlier overtime pay acts of June 28 and October 21, 1940 and June 3, 1941, supra, and by enacting in the first proviso "That the authorization contained herein to pay overtime compensation to certain groups of employees is hereby extended, effective December 1, 1942, to all civilian employees in or under the United States Government, * * *" (with certain exceptions), included and carried forward the language of the earlier acts which provided for the payment of overtime compensation to certain employees "for employment in excess of forty hours in any administrative workweek computed at a rate not less than one and one-half times the regular rate." However, we cannot agree with plaintiffs' argument that because the last quoted provision was by reference carried into Joint Resolution 170 and the War Overtime Pay Act of 1943, it must be held that Congress intended to treat the entire time covered by the scheduled tours of duty of employees engaged in work such as that performed by plaintiffs as "hours of employment" or "hours of duty," to be compensated for as overtime work at time and one-half to the extent that the maximum number of hours in such tours of duty exceeded 40 hours per week.

The statutes providing for payment of overtime compensation "for employment in excess of forty hours," in effect prior to the approval of Joint Resolution 170, included only certain groups of employees who, by reason of the nature of their employment, devoted all of their time on duty to actual work. Section 1 of Joint Resolution 170 extended these acts from November 30, 1942, to April 30, 1943, and, in addition, by the first proviso extended, effective December 1, 1942, the authorization therein contained to pay overtime compensation to the previously named groups of employees, "to all civilian employees in or under the United States Government, including Government-owned or controlled organizations (except employees in the legislative and judicial branches), and to those employees of the District of Columbia municipal government who occupy positions subject to the Classification Act of 1923, as amended [5 U.S.C.A. § 661 et seq.]." If the statute had ended with the enlarged provision just quoted we would have a different question to decide. However, the language and legal effect of the earlier overtime pay statutes and of the first proviso above quoted, so far as concerned certain classes of employees and also employees such as plaintiffs, were materially modified and limited by other provisions in Section 1 of Joint Resolution 170. The second proviso entirely excluded three specified groups of officers and employees from the benefits of the overtime pay provisions. The third proviso limited the right to overtime pay of those employees not excluded to that part of their basic compensation not in excess of $2,900 per annum. The third proviso, which we think is controlling with respect to the claims here involved, provided as follows:

"And provided further, That officers or employees whose compensation is based on mileage, postal receipts, fees, piecework, or other than a time period basis, or whose hours of duty are intermittent, irregular, or less than full time, substitute employees whose compensation is based upon a rate per hour or per day, and employees in or under the legislative and judicial branches, shall be paid additional compensation, in lieu of the overtime compensation authorized herein, amounting to 10 per centum of so much of their earned basic compensation as is not in excess of a rate of $2,900 per annum, and each such employee shall

be paid only such additional compensation or portion thereof as will not cause his aggregate compensation to exceed a rate of $5,000 per annum." (Italics supplied.)

The War Overtime Pay Act, effective May 1, 1943, 57 Stat. 75, superseded Joint Resolution 170, and after specifying in Section 1 certain groups of officers and employees to whom the Act should not apply, provided in Section 2 that "Officers and employees to whom this Act applies and who are not entitled to additional compensation under section 3 shall be paid overtime compensation computed on the same basis as the overtime compensation which was authorized to be paid under Public Law Numbered 821 [Joint Resolution 170], Seventy-seventh Congress." Section 3 provided, so far as here material, that "Except as provided in subsection (c), officers and employees to whom this Act applies and whose hours of duty are intermittent or irregular, * * * shall be paid, in lieu of the overtime compensation [time and one-half of the hourly rate computed as specified] authorized under section 2 of this Act, additional compensation at the rate of (1) $300 per annum if their earned basic compensation is at a rate of less than $2,000 per annum, or (2) 15 per centum of so much of their earned basic compensation as is not in excess of a rate of $2,900 per annum if their earned basic compensation is at a rate of $2,000 per annum or more." It will be noted that this Act of 1943, so far as the merits of the claims made in these cases are concerned, did not materially change the provisions of Joint Resolution 170 of December 22, 1942.

Viewed as a whole it seems clear that in these acts, Congress intended to authorize the payment of overtime compensation at time and one-half of the hourly rate for excess hours of actual work or additional compensation, in lieu of overtime, for only the time in excess of forty hours per week which the employees concerned devoted to actual work as nearly as could be determined. Congress appears to have made these determinations in the statutes referred to. As to the first group of employees having an established workweek of more than 40 hours, all of which they devoted to actual work, or employees having a workweek of 40 hours and at certain times required to work a greater number of hours, it was a simple matter to apply the provisions for overtime compensation at time and one-half for the excess hours devoted to actual work when ordered. As to other groups of employees referred to in the last proviso of section 1 of Joint Resolution 170, above quoted, and in section 3 of the act of May 7, 1943, Congress recognized that the matter of keeping accurate records of the exact number of hours per week devoted to actual work by certain classes of employees, or of establishing a workweek during which all of the time or hours included therein would be devoted to actual work, would not be feasible as a practical proposition. Congress, therefore, after entirely excluding certain officers and employees, prescribed different methods for the determination and computation of the amounts of compensation for overtime work payable to the several groups of employees covered by the statutes, and authorized and directed the President, the Civil Service Commission and the heads of the departments concerned to make necessary and proper regulations for the administration of the statutes. As to all groups of employees covered by the statutes, we think Congress intended that the authorized overtime compensation and also the specified additional compensation, in lieu of overtime, should be based as far as possible on hours of service devoted to actual work, and that in order to carry out this rule with reference to all employees it used the word "employment" contained in the earlier acts of 1940 and 1941, carried forward into the later acts, and the words "hours of duty" in the last proviso of Joint Resolution 170 and in section 3 of the act of May 7, 1943, in the sense of time or hours devoted to actual work, rather than in the sense of tours of duty of certain employees during portions of which tours of duty they were not engaged in actual work. Under this interpretation as to the intent and meaning of the statutes the plaintiffs, by reason of the nature of their assignments, were properly classified as employees whose "hours of duty" were intermittent or irregular. Our interpretation of the statutes and our conclusion that

plaintiffs were, under the regulations promulgated, properly classified and paid additional compensation in lieu of overtime, in accordance with the statutes, is supported by the language of the report of the Senate Civil Service Committee on Joint Resolution 170, Senate Report No. 1847, 77th Cong., 2d session, which stated, with reference to the last proviso of section 1, as follows:

"Provision is made for the payment of *additional compensation* to certain employees, *the nature of whose work* does not readily lend itself to an overtime pay program. Such additional compensation would amount to 10 percent of so much of an employee's salary as does not exceed a rate of $2,900 per annum * * *. Included in this category would be employees * * * whose hours of duty are intermittent, irregular, or less than full time." [Italics supplied.]

■ While it is true, as plaintiffs contend, that the aim and purpose of Congress was to provide for the payment of overtime compensation and the statutes should be interpreted with that fact in mind, it does not necessarily follow from the language of the statutes and the Committee report that Congress intended to direct the payment of overtime compensation at time and one-half for the full number of hours in tours of duty, in excess of 40 hours per week, for certain groups of employees, such as lighthouse keepers, forest rangers and firefighters, the nature of whose work and employment made it necessary that they remain, subject to call, at or near their posts of duty for extended periods of time, but did not require that all of their time be devoted to actual work. It would be unreasonable to suppose that Congress thought that employees would, or intended that they should, be required to engage in actual work for 24-hour periods. Congress prescribed the standards for the classification of employees for overtime pay purposes but left the decision as to what specific groups of employees should come within the specified classifications to be taken care of by "necessary and proper" regulations to be prescribed by the President, the Civil Service Commission and the heads of the departments concerned. Regulations so prescribed have the force and effect of law unless clearly beyond the authority conferred or produce a result clearly different from that intended by Congress. It appears, as defendant points out, that Congress viewed the provisions for overtime compensation as producing an increase in compensation of approximately 21⅔ per centum for employees earning $2,900 or less per annum. If plaintiffs' contention that they should be placed in the classification of employees entitled to overtime compensation at time and one-half, they would receive, upon the basis of their full 24-hour tours of duty, an increase of 165 per centum in their pay. A similar application of the statute to lighthouse keepers and other similar groups of employees required to remain, subject to call, at their posts of duty for more than 84 hours per week, which was the average number of hours in plaintiffs' tours of duty, the increased overtime compensation payable under the statute could amount to as much as 480 per centum. We do not think Congress intended such results.

Pursuant to authority contained in section 5(a) of the act of June 28, 1940, 50 U.S.C.A.Appendix, § 1155(a), which was continued by Joint Resolution 170, the President issued Executive Order No. 9289, dated December 26, 1942, which contained, among others, the following provision: "Section 7. Employees such as certain forest-fire lookouts, forest guards, and lighthouse keepers the nature of whose work (as determined by the head of the department or agency concerned) requires them to remain at or within the confines of their posts of duty for more than 40 hours per week but does not require that all of their time be devoted to actual work shall be considered to have intermittent or irregular hours of duty within the meaning of the last proviso of section 1 of the said Senate Joint Resolution 170, 77th Congress."

Pursuant to this Executive Order the Secretary of War issued regulations which contained the following paragraph: "a. Employees such as firefighters who because of the nature of their work are required to remain at or within the confines of their posts of duty for more than 40 hours per week, but who are not required to devote all their time to actual work,

will be considered to have intermittent or irregular hours of duty and are subject to the provisions of this paragraph."

It must be assumed that Congress was aware of these contemporaneous interpretations when it enacted the Overtime Pay Act of May 7, 1943, which contained, in section 3, almost exactly the same language which had been enacted in the last proviso of Joint Resolution 170.

Section 9 of the act of May 7, 1943, authorized and directed the Civil Service Commission to promulgate rules and regulations for the administration of that act, and by section 20.7 of regulations promulgated May 8, 1943, the Commission continued the above-mentioned interpretation as applicable under the provisions of section 3 of the 1943 act. Similar regulations were promulgated by the Secretary of War.

The regulations above referred to were promulgated under and within the authority expressly conferred and they cannot be held invalid under the applicable provisions of the statutes, as applied to the facts and circumstances of these cases.

The facts and the provisions of the statutes and regulations here involved distinguish these cases from Armour & Co. v. Wantock, supra, and Skidmore v. Swift & Co., supra, relied upon by plaintiffs. Those cases were decided under a statute, the language of which did not contain the restrictions and limitations found in the Federal overtime pay acts and the regulations promulgated pursuant thereto with reference to employment and hours of work for the purposes of the determination and payment of compensation for overtime to Federal employees.

We do not deem it necessary to discuss at length the amended regulations promulgated by the Civil Service Commission, January 4, 1945, and by the Secretary of War, January 25, 1945, effective January 1, 1945. Under these regulations the plaintiffs and employees similarly situated were considered as working 16 hours within the spread of each 24-hours daily tour of duty, thereby, in effect, establishing for them an average workweek of 56 hours for the purpose of overtime compensation at time and one-half of their hourly rate of pay, determined in accordance with the formula prescribed by the statutes. These amended regulations were within the authority conferred upon the Civil Service Commission under section 9 of the Overtime Pay Act of 1943, and they were favorable rather than unfavorable to plaintiffs. However, we find nothing in the statutes of 1942 and 1943 that requires the conclusion that such regulations should, in effect, be applied or enforced retroactively.

As to plaintiffs' contention that defendant erred in computing their hourly rates of pay for the purpose of additional compensation in lieu of overtime, under the original regulations, and for the purpose of overtime compensation under the amended regulations, it is sufficient to say that the method employed was that expressly prescribed by the statutes and the regulations. The statutes providing for payment of overtime compensation which were carried into Joint Resolution 170, provided that "in determining the overtime compensation of the foregoing per annum Government employees the pay for one day shall be considered to be one three-hundred-and-sixtieth of the respective per annum salaries." This same basis of computation was carried into section 2 of the act of 1943. The regulations provided that "the daily rate shall be considered to be $\frac{1}{360}$ of the annual rate, and the hourly rate shall be considered to be $\frac{1}{8}$ of the daily rate." As to employees who were entitled to additional compensation in lieu of overtime and whose annual compensation was such as to entitle them to $300 per annum, respectively, the regulations provided for the payment of "$\frac{1}{360}$ of $300 for each day in a pay status." For the reasons stated the rule applied in Townsley v. United States, 101 C.Cl. 237, which involved a different statute, is not applicable.

The number of hours for which plaintiffs claim overtime compensation for the periods involved during their scheduled tours of duty of 24 hours each, in excess of 40 hours per week, are taken from the figures stipulated by the parties. However, it should be noted that under the regulations of the Civil Service Commission and the Secretary of War and in actual practice, the time during which an employee, includ-

974

ing employees holding positions such as those held by plaintiffs, was off duty on leave (sick or annual) with pay, was not excluded or deducted for overtime pay purposes or for the purpose of additional compensation in lieu of overtime, but only the time off duty without pay was to be deducted for the purpose of computing the amount due for overtime pay or additional compensation in lieu of overtime. (See Section 20.11(a) and (b), Civil Service Overtime Pay Regulations, Part 20, May 8, 1943, Exhibit A; and as amended October 17, 1944, sections 20.10, 20.11, and 20.16, Exhibit E.) There is no evidence or claim that defendant, in computing and paying plaintiffs additional compensation in lieu of overtime under the statutes and regulations in effect prior to January 1, 1945, deducted any portion of time off with pay. The evidence shows that in computing and paying plaintiffs overtime at time and one-half of their hourly rate of pay for 16 hours of overtime per week, on the basis of an established workweek of 56 hours, subsequent to January 1, 1945, defendant did not exclude or deduct any time during which any of plaintiffs was off duty on leave with pay. We think the practice and the regulations in this regard were in conformity with the purpose and intent of the overtime pay statutes.

Plaintiffs are not entitled to recover. The petitions are, therefore, dismissed. It is so ordered.