**BEAL et al. v. UNITED STATES.**
No. 11072.

United States Court of Appeals
Sixth Circuit.
May 29, 1950.

Monroe Oppenheimer, Washington, D. C., Harry B. Miller, and Harry B. Miller, Jr., Lexington, Ky., Monroe Oppenheimer and Robert E. Sher, Washington, D. C., on brief, for appellants.

Irvin M. Gottlieb, Washington, D. C., Claude P. Stephens, Lexington, Ky., H. G. Morison, Edward H. Hickey, Irvin M. Gottlieb, and Joseph B. McGrath, all of Washington, D. C., on brief, for appellee.

Before HICKS, Chief Judge and SIMONS and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The appellants were firefighters employed by the War Department at the Lexington Signal Depot, a United States Army installation. They were required to be on duty under the so-called two-platoon system, 24 hours on and 24 hours off, and to remain alert within the confines of the depot during each 24 hour tour of duty, except for an 8 hour interval for sleep and meals, ready at all times to respond to fire calls. Their tour of duty totaled 168 hours every two weeks, or an average of 84 hours per week. After deducting the al-

lowable time for sleep and meals this amounted to an average of 56 hours of service per week. Their view is that the time spent on duty in excess of 40 hours per week was compensable. They sued to recover compensation based upon time and one-half for the period of employment prior to January 1, 1945. The court dismissed the action on the ground that their complaint failed to state a claim upon which relief could be granted, and they are here on appeal.

We meet first a jurisdictional question. The government asserts that the district court was without jurisdiction because the appellants were "officers" of the United States and so are precluded from suing in the district court by virtue of the exception in the 1898 amendment to the Tucker Act, 28 U.S.C.A. § 1346(d) (2), which deprives district courts of jurisdiction over suits brought by officers to recover "fees, salary or compensation for official services." While the court below disagreed with this view the government still presses the jurisdictional question. The appellants contend that they are not officers because they were not appointed by the Secretary of War; because the Secretary was not required to make the appointments even though he had authority to do so and because their positions were not specifically created by statute.

■ We accept the rationalization of the appellants that if any one of the three alleged prerequisites that distinguishes officers from mere employees is wanting, the status of persons as officers of the United States is not established. We find it unnecessary, therefore, to consider whether the appellants were appointed by the Secretary of War or his lawfully delegated subordinate, or whether there is any significantly legal difference between statutory requirement and statutory authority, and confine ourselves to the question whether the positions filled by the appellants were posts specifically created by statute. The tests which distinguish officers from employees have been considered in numerous cases. No clearly defined or generally accepted formula appears. This only may with confidence be said: the dis-

tinction does not rest upon difference in necessary qualifications or in the character of the service to be performed, but "Whether the incumbent is an officer or an employe is determined by the manner in which Congress has specifically provided for the creation of the several positions, their duties and appointment thereto." Burnap v. United States, 252 U.S. 512, 516, 40 S.Ct. 374, 64 L.Ed. 692. Congressional authority for the creation of the post is, of course, indispensable to the status of an incumbent as an officer. Views diverge, however, upon the manner necessary for conferring authority. One line of cases appears to hold that no office is created unless there is specific authority for its establishment in some Act of Congress which defines its nature, duties, tenure and emoluments. Another group of cases seems to hold that general authority to a department-head to employ and pay assistants or subordinates constitutes incumbents as officers. Typical of the first group is Burnap v. United States, supra, and Martin v. United States, 8 Cir., 168 F. 198, and of the second, Kennedy v. United States, 5 Cir., 146 F.2d 26, and Surowitz v. United States, D.C.S.D.N.Y., 80 F.Supp. 716.

It seems to us, however, that with this apparent confusion we should adhere strictly to the rationalization of Mr. Justice Brandeis in the Burnap case. There was there involved the status of a landscape architect in the Office of Public Buildings and Grounds. No statute was found creating the office nor any which defined the duties of the position. The only authority for the appointment of a landscape architect was an appropriation act. Burnap claimed to be an officer and not an employee. This was vital to his claim that he was unlawfully removed and to recovery of his full salary. The dismissal of his petition by the Court of Claims on the ground that he was but an employee, was affirmed.

■ Here, as there, no Act of Congress appears which specifically creates the positions occupied and details the duties, tenure and emoluments of incumbents. The posts were filled under a blanket authority (5 U.S.C.A. § 43), which author-

izes employment by each executive department and independent establishment of such clerks and other employees of various classes as may be appropriated for by Congress from year to year. This is neither express nor specific authority for the creation of an office of firefighter. Appropriation acts do not create offices. There must be a basic authority for the creation of an office. If the matter were ever obscure it has now been clarified. Cain v. United States, D.C., 73 F.Supp. 1019. We think the sounder rule to be that an office of the United States does not exist unless it is created by some specific Act of the Congress. Moreover, the argument is impressive that if this were not so distinctions between officers and employees would largely disappear. The appellants were not precluded from presenting their complaint for adjudication in the District Court of the United States.

Upon the meritorious issue here involved we give consideration to two applicable statutes, the first being Joint Resolution 170, Dec. 22, 1942, 56 Stat. 1068, covering the period December 1, 1942 to April 30, 1943, and the War Overtime Pay Act of 1943, 57 Stat. 75, covering the period May 1, 1943 to June 30, 1945. Both provide that all civilian employees in the executive branch of the United States Government should be paid overtime compensation at time and one-half for all hours of employment in excess of 40 hours per week. Each statute, however, contains a proviso that officers or employees whose hours of duty are *intermittent, irregular* or less than full time, shall be paid additional compensation in lieu of overtime compensation amounting to 10% under the first statute and 15% under the second, without regard to the number of hours worked by such employees. Joint Resolution 170 empowered the President to promulgate such necessary and proper regulations as might be required for its administration. Pursuant to this authority the President promulgated Executive Order 9289, Dec. 26, 1942, providing that employees, the nature of whose work "as determined by the head of the department or agency concerned" required them to remain within the confines of their posts of duty for more than 40 hours a week but did not require that all their time be devoted to actual work, might be considered to have "intermittent or irregular hours of duty" within the meaning of the statute. The War Overtime Pay Act of 1943 superseded Joint Resolution 170 and empowered the Civil Service Commission rather than the President to issue such necessary and proper regulations as might be required for its administration, and pursuant to this authority the Commission issued regulations containing a provision almost identical with that in the Executive Order, but qualified to provide that this class of employees "may be considered to be intermittent or irregular employees, or in the discretion of the head of the department or agency concerned, may be considered to be fulltime employees having such administrative work week as is specified by such head." Acting under this discretion the Secretary of War issued War Department Order "H" classifying appellants as intermittent or irregular employees. The crux of the controversy is in respect to the validity of these regulations as being within the terms of the statute, and a reasonable exercise of the authority granted the President in the first instance and the Civil Service Commission in the second, to promulgate such necessary and proper regulations as might be required for administration.

 The appellants contend that there was no basis for treating them as employees whose hours of duty were irregular, intermittent or less than full time, because their hours were entirely regular and consistently recurrent, and the regulations therefore invalid. This view was rejected by the Court of Claims in respect to similar employees, in Conn v. United States, 107 Ct.Cl. 422, 68 F.Supp. 966, 107 Ct.Cl. 422; Certiorari Denied 332 U.S. 757, 68 S.Ct. 55, 92 L.Ed. 343; rehearing denied 332 U. S. 819. The district court relied upon and followed the Conn case in dismissing the complaint. In so doing it is apparent, from the colloquy recited in the record, that it considered the Conn case controlling because the Supreme Court had denied certiorari therein and had also denied a petition for rehearing. Were it not already clear from previous admonitions of the Supreme Court that a denial of certiorari im-

ports to the court no view upon the merits of a controversy, the carefully developed exposition of Mr. Justice Frankfurter in State of Maryland **v.** Baltimore Radio Show, 338 U.S. 912, 70 S.Ct. 252, precludes any further misunderstanding as to the implications of denial. We view the Conn case, therefore, as but the decision of another court, entitled to respect but persuasive only insofar as its logic may appeal to us, and no more.

█ Giving careful consideration to the President's proclamation, the regulation of the Civil Service Commission, the order of the War Department and the statutory authority conferred upon these administrative agencies within a concept that waiting time of firefighters is not working time and so compensable, a reasonable basis for the promulgation of the regulation might be perceived, in view of the fact that both working time and stand-by time of men engaged in protecting property from fire must necessarily be to some degree irregular and intermittent. In any event, it would require the clearest demonstration of arbitrariness to justify a court in striking down a proclamation of the President or a regulation of the Civil Service Commission, as invalid.

Two important later events, however, have completely changed the picture. On December 4, 1944, the Supreme Court announced its decisions in Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118, and Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124. The opinions therein announced the principle that time spent on an employer's premises by fireguards, subject to call excluding time spent sleeping and eating, was working time and compensable. These cases were decisions under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., in respect to employees of private industries, but the rationalization was in terms broad and comprehensive. Conceivably, the Civil Service Commission might have stood its ground, pointed to the difference in the statutes involved and insisted upon the application of its original regulation. It did not.

On January 4, 1945, it corrected its regulations under the War Overtime Pay Act, effective January 1, 1945. It provided that in the case of employees whose work includes periods during which they are required to remain on duty and render standby service at or within the confines of their stations, the administrative work week for the purpose of the regulations shall be the total number of regularly scheduled hours of duty per week, except that allowed by regulation of the department or independent establishment for sleep and meals. It is agreed that since January 1, 1945, the appellants have been paid at the rate of time and one-half in pursuance of the amended regulation, and that period is not here involved. At the time the Commission promulgated its amended regulation it issued Department Circular 24, stating that the purpose of the amendment was to eliminate the option that departments and agencies have had under the former regulation to treat occupations whose regular tours of duty include stand-by or on-call time, as irregular or intermittent and to include such time within the administrative work week so as to accord with two recent decisions of the Supreme Court of the United States dealing with a similar situation in industry under the Fair Labor Standards Act, citing the Armour and Skidmore cases.

█ If, as pointed out by Mr. Justice Jackson in the Skidmore case, good administration and good judicial administration alike require that the standards of public enforcement and those for determining private rights shall be at variance only where justified by very good reasons, and that the court should give considerable and in some cases decisive weight to interpretative regulations even though not of adversary origin, then, it seems to us, even greater weight should be given to an administrative decision reached after matured consideration and experience in the administration of a statute than should be accorded to an earlier regulation, the nature of which is necessarily experimental. Above and beyond this, however, the conclusion is inescapable that once it appears that waiting or stand-by time is compensa-

ble and so working time, then every aspect of irregularity and intermittency disappears as characteristic of the duty required of the appellants under the terms of their employment. This being so, the invalidity of the original regulation becomes apparrent as being beyond the authority vested in the Commission by the statute. It is true that the amended regulation is not, by its terms, made retroactive, but no issue as to retroactivity is here perceived. If standby time is, in final anaylsis, compensable and therefore working time, it was such before the promulgation of the amended regulation as well as since. If the statute providing for overtime compensation applies now it did earlier. So viewing the problem we think the complaint lodged in the district court by the appellants, states a claim for relief which may by it be adjudicated.

We have not overlooked the contention of the government that the appellants' claims should be barred because of laches, but that defense rests both upon allegation and proof. Laches is based not merely upon delay in asserting a claim but upon whether such delay has been prejudicial to the litigant who asserts it, and only if he does assert it. The case not having been fully tried no facts are established upon which to base decision here. It will be time enough to consider the defense when and if, upon proofs at the trial and appropriate findings of the court, the issue is here presented.

Reversed and remanded to the district court for trial.