## BROOKS v. UNITED STATES.
### Civ. No. 246.

District Court, E. D. New York.
Nov. 2, 1939.

Albert Hutton, of Brooklyn, N. Y. (Denis M. Hurley and James J. Manogue, both of Brooklyn, N. Y., of counsel), for plaintiff.

Harold M. Kennedy, U. S. Atty., Eastern District of New York, of Brooklyn, N. Y., Enoch E. Ellison, Atty. for Department of Justice, of Washington, D. C., Vine H. Smith, Asst. U. S. Atty., of Brooklyn, N. Y., and Morris K. Siegel, Asst. U. S. Atty., of New York City, for the United States.

MOSCOWITZ, District Judge.

This action is brought by plaintiff, an enlisted man in the United States Navy, to recover the sum of $350 for reenlistment allowances under the basic pay act known as the Joint Service Pay Act of June 10, 1922, 37 U.S.C. § 16, 37 U.S.C.A. § 16. The pertinent part of Section 16 reads as follows: " * * * an enlistment allowance equal to $50 multiplied by the number·

of years served in the enlistment period from which he has last been discharged, but not to exceed $200, shall be paid to every honorably discharged enlisted man of the first three grades who reenlists within a period of three months from the date of his discharge."

Plaintiff first enlisted in the Navy in 1919 and received his last reenlistment allowance in 1931 when he reenlisted with the rating of First Class Storekeeper. In his first count he seeks $200 for his reenlistment in October 1935 with a rating of First Class Storekeeper, or First Class Petty Officer, and $150 for his reenlistment in October 1938 with the rating of Chief Storekeeper, Permanent Appointment, or Chief Petty Officer. In accordance with the Bureau of Navigation Manual which is issued by the Chief of the Bureau of Navigation with the approval of the Secretary of the Navy, plaintiff received his appointments from his Commanding Officer and from the Chief of the Bureau of Navigation.

The first defense contained in defendant's answer denies that this Court has jurisdiction of this case under the Tucker Act, 28 U.S.C. § 41(20), 28 U.S.C.A. § 41 (20), and alleges that the action should have been brought in the Court of Claims. The applicable provisions of Subdivision (20) are as follows: "Nothing in this paragraph shall be construed * * * as giving to the district courts jurisdiction of cases brought to recover fees, salary, or compensation for official services of officers of the United States or brought for such purpose by persons claiming as such officers or as assignees or legal representatives thereof; * * *."

It therefore becomes necessary to determine whether the plaintiff was an "officer of the United States" within the meaning of the statute just quoted.

The language "officer of the United States" finds well accepted definition in the Constitution of the United States. Article II, Section 2, Clause 2 of the Constitution, U.S.C.A., divides "officers of the United States" into those named in the Constitution and "all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law * * *." As to this latter group it further provides: "but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."

Admittedly, the plaintiff was not appointed by the President or by a Court of Law and it remains only to consider whether he was appointed by a Head of a Department. A long line of cases establishes that the term "Head of a Department" as used in this clause of the Constitution means one of the members of the President's Cabinet. It does not include a mere Bureau head. United States v. Germaine, 99 U.S. 508, 25 L.Ed. 482; Burnap v. United States, 252 U.S. 512, 40 S.Ct. 374, 64 L. Ed. 692; Steele v. United States No. 2, 267 U.S. 505, 45 S.Ct. 417, 69 L.Ed. 761. Thus in Morrison v. United States, 40 F. 2d 286, D.C.S.D.N.Y., a petty officer not appointed by the President or a cabinet officer was held not to be an officer of the United States and therefore capable of suing in this Court, whereas in Foshay v. United States, 54 F.2d 668, D.C.S.D.N.Y., a clerk appointed by the Postmaster-General, the head of an executive department, was held to be an officer of the United States and incapable of suing for pay in this Court. Oswald v. United States, 9 Cir., 96 F.2d 10, similarly held a court reporter, appointed by the Court, under a disability to sue for salary in the District Court under the provisions of the Tucker Act. Numerous other cases such as Scully v. United States, 193 F. 185, 187, C.C.D. Nev., have defined "officer of the United States" in terms of the constitutional meaning of the records. See, also, United States v. Van Wert, D.C.Iowa, 195 F. 974; United States v. Brents, D.C.Iowa, 195 F. 980; McGrath v. United States, 2 Cir., 275 F. 294.

Considerable effort has been made by the government to classify Chief Petty Officers as "officers" for purposes of the Tucker Act. This analysis of the government, however, is in reality an attempt to define "officer of the United States" in terms of what may constitute an "officer of the Navy." The Tucker Act, in defining the jurisdiction of the District Courts, laid down a set of rules in cases of suits by all "officers of the United States". It is most improbable that, with a well accepted constitutional meaning of "officers of the United States", Congress ever intended a different meaning to that phrase which would permit varying departmental meanings of the word "officer" to affect the meaning of a statute of general application. Wherever

the Courts have departed from the constitutional meaning of the words, they have done so only because the clear meaning of the statute was the impelling force in reaching a broader definition, or because the words in question were "officer," "civil officer", etc., and not "officer of the United States". Viewed against this background, all of the cases cited by the government are readily distinguishable.

██ So far as the government points to the legislative history of Subdivision (20) of the Tucker Act (Report No. 325, House of Representatives, 55th Cong., 2d Sess.), as evidencing a Congressional intent to localize "salary suits" of "officers of the United States" in the Court of Claims, this history affords no basis for placing the line of exclusion at a point set by departmental meanings of the word officer. If anything the history would point to an intent to localize all salary suits in the Court of Claims, whether they be suits of officers or employees. However, by limiting the excluded class to "officers of the United States", Congress evidenced the bounds of its intent in this direction.

██ The second defense contained in the answer alleges that the right to reenlistment allowances provided by the basic pay act of June 10, 1922 has been suspended each year, beginning with the fiscal year commencing July 1, 1933, to and including the fiscal year ending June 30, 1939. The pertinent provisions of the Treasury-Post-Office Appropriation Act, fiscal year 1934, Act of March 3, 1933, Section 18, 47 Stat. 1519, 37 U.S.C.A. § 13 note, provide as follows: "So much of sections 9 and 10 of the Act entitled 'An Act to readjust the pay and allowances of the commissioned and enlisted personnel of the Army, Navy, Marine Corps, Coast Guard, Coast and Geodetic Survey, and Public Health Service,' approved June 10, 1922 (U.S.C., title 37, secs. 13 and 16), as provides for the payment of enlistment allowance to enlisted men for reenlistment within a period of three months from date of discharge is hereby suspended as to reenlistments made during the fiscal year ending June 30, 1934."

This provision was reenacted for the fiscal years 1935 (Act of March 28, 1934, Section 24, 48 Stat. 523), 1936 (Act of May 14, 1935, 49 Stat. 226, 227), and 1937 (Act of June 23, 1936, 49 Stat. 1837).

For the fiscal year 1938, the following provision was made by the Act of May 28, 1937, 50 Stat. 232: "No part of any appropriation contained in this or any other Act for the fiscal year ending June 30, 1938, shall be available for the payment of enlistment allowance to enlisted men for reenlistment within a period of three months from date of discharge as to reenlistments made during the fiscal year ending June 30, 1938, notwithstanding the applicable provisions of sections 9 and 10 of the Act entitled 'An Act to readjust the pay and allowances of the commissioned and enlisted personnel of the Army, Navy, Marine Corps, Coast Guard, Coast and Geodetic Survey, and Public Health Service', approved June 10, 1922 (U.S.C., title 37, secs. 13 and 16)."

A substantially identical provision appears in the Act of June 21, 1938, § 402, 52 Stat. 819, relating to the fiscal year 1939.

So far as the Acts affecting the fiscal years 1934, 1935, 1936, and 1937 are concerned, it is clear that Congress intended a pro tanto repeal of the Act of June 10, 1922. These Acts state that the operation of the Act of June 10, 1922 "is hereby suspended as to reenlistments made during the fiscal year." There was no mere failure to appropriate funds. There was, on the other hand, an express suspension of the statute providing for enlistment allowances. During the period of these Acts the basic statute had been made inoperative and accordingly no claim can be recognized for enlistment allowances allegedly accruing during this period.

The Acts affecting the fiscal years 1938 and 1939, while they present a somewhat different form of language, do not alter the ultimate effect. In these years, Congress did not expressly suspend the operation of the Act of June 10, 1922, but it did forbade the use of any funds appropriated for those fiscal years to pay reenlistment allowances for reenlistments made during those fiscal years. Thus the service man at the time of his reenlistment in either of these two years was aware of the fact that Congress had made no provision for reenlistment allowances for these two years. At most there was an uncertain promise to cover this deficiency at some indefinite time in the future, if Congress found itself so disposed. The failure to appropriate funds "notwithstanding the applicable provisions of sections 9 and 10 of the Act," made it evident that the United States assumed no obligation

that the reenlistment allowance would be paid. In this sense the instant case is distinguishable from United States v. Langston, 118 U.S. 389, 6 S.Ct. 1185, 30 L.Ed. 164, and other cases of that sort where it has been held that where a fixed contractual obligation has been set prior to the failure to appropriate funds, this failure to appropriate will not remove the legal liability fixed by the original commitments.

Decree for the defendant. Settle findings and decree on notice.