Robert N. WALSH, Peter Moretti, Fred W. Dickman, Harold O. Battersby, Edwin E. Harbaugh, Alexander Chestnut, Sewell A. Bennett, Charles Wilson, Albert Locke, Daniel Koch, John A. Brady, Margaret M. Flynn, Administratrix of the Estate of Hugh Flynn, Deceased, Clifford Rule, Harry McGalla, Samuel N. Rule, William L. Hess, William Prem, Charles Brady, Henry Christensen, Herbert Burnett, Nicholas J. Masino, John Lamprow, Charles A. McKeever and Frank J. Morrison,

v.

UNITED STATES of America.

Civ. A. No. 6388.

United States District Court
E. D. Pennsylvania.

Nov. 13, 1957.

Wilfred R. Lorry (of Freedman, Landy & Lorry), Philadelphia, Pa., for plaintiffs.

Joseph J. Zapitz, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

The trial judge makes the following Findings of Fact and Conclusions of Law:

## I. Findings of Fact.

1. The plaintiffs were hired as fire. fighters for the Philadelphia Cargo Port of Embarkation at various times during the years 1943 and 1944, by 1st Lieutenant (later Captain) J. F. Rosprin, Transportation Corps, Civilian Personnel Branch, under procedures set up by the War Service Regulations of the Civil Service Commission (see plaintiffs' Requests for Finding of Fact No. 1 and Exhibits D–1—D–25).

2. Such hiring was done pursuant to Orders "M" (attached to Exhibit D–25) issued by the Secretary of War, effective September 1, 1942. Under the authority of 5 U.S.C.A. § 43, Orders "M" delegates the authority of the Secretary of War to the Commanding Generals, Services of Supply, Army Air Forces, and Army Ground Forces, to take final action on personnel transactions in the field service.[1] Also, representatives of the Civilian Personnel Division of the Office of the Secretary of War had to assure compliance by these Generals "with Departmental policies, standards, and procedures; Civil Services rules and regulations; Comptroller General's decisions, and established legal requirements; by the appropriate audit and inspection of such actions * * *."

3. There is no specific Act of Congress or Executive Order which authorizes the establishment of a fire department at a War Department installation or which provides for the creation, duties, or method of appointment to the position of firefighter. Such authority stems from the responsibilities of the port commander (see Army Regulations No. 210–10) to provide for the safety and

1. Defendant's contention that the letter executed by George L. Coles, C. W. O., U. S. Army, the Commanding Officer, Philadelphia Port of Embarkation (see Exhibit D–26) was the authorization for the hiring of plaintiffs cannot be accepted. Since plaintiffs were employed at various times during 1943 and 1944, this letter dated February 10, 1944, cannot purport to be the authorization for the hiring of all of the plaintiffs. The docu-ments attached to the oaths of office executed by plaintiffs (Exhibits D–1 to D–24, inclusive) disclose that letters were written to the Commanding Officer, Philadelphia Port of Embarkation, by the Regional Director of the local Civil Service Region, authorizing the employment of each plaintiff, and then that plaintiff was sworn in by an Army officer (Rosprin) acting for the above-mentioned Port Commander.

defense of the post (see plaintiffs' and defendant's requested Findings No. 3).

4. The final composition and operation of the fire department for this post was determined by the port commander with command concurrence by the Chief of Transportation. The port engineer (under 10 U.S.C.A. § 181b[*] and Army Regulations No. 100–80 2b(4) (h)— Exhibit D–27) and the port commander were the administrative officials in charge of the fire department and were responsible for its activities and operation (see plaintiffs' requested Finding No. 2 and Exhibit D–25).

5. Each of the plaintiffs executed an oath of office, affidavit and declaration of appointee (Exhibits D–1—D–24).

6. Plaintiffs' requested Findings of Fact Nos. 4 to 33, inclusive, are adopted as Findings of Fact of this court.

All requests for Findings of Fact which are inconsistent with the foregoing are denied.

## II. Discussion.

Plaintiffs brought this action in 1946 to recover overtime compensation allegedly due them under the War Overtime Pay Act of 1943, 50 U.S.C.A.Appendix § 1401 ff., for their services as firefighters. Jurisdiction was based on the Tucker Act, which granted to the District Court original jurisdiction, concurrent with the Court of Claims, over certain civil actions against the United States.

When this suit was begun, 28 U.S.C.A. § 41(20) (incorporated into 28 U.S.C.A. § 1346(d) by the 1948 revision of the

United States Code, Title 28)[2] read that nothing in the Tucker Act shall be construed as giving the District Court:

"* * * jurisdiction of cases brought to recover fees, salary, or compensation for official services of officers of the United States. or brought for such purpose by persons claiming as such officers or as assignees or legal representatives thereof; but no suit pending on the 27th day of June, 1898, shall abate or be affected by this provision."

After the 1948 revision of the Judicial Code, 28 U.S.C.A. § 1346(d) read:

"The district courts shall not have jurisdiction under this section of:

*   *   *   *   *   *

"(2) Any civil action to recover fees, salary, or compensation for official services of officers of the United States."

While the case was pending, § 50(b) of the Act of October 31, 1951, P.L. No. 248, 65 Stat. 710, 727(1951), amended the above provision by adding the two words "or employees" after the word "officers," thereby withdrawing the jurisdiction of the District Court. Such Act did not reserve jurisdiction for the District Court over pending cases and, in accordance with Bruner v. United States, 1952, 343 U.S. 112, 72 S.Ct. 581, 96 L.Ed. 786, defendant's motion to dismiss on jurisdictional grounds was granted on July 7, 1952.

Public Law 562, 70 Stat. 246, 28 U.S. C.A. § 1346 note,[3] approved on June 4,

---

[*] Now 10 U.S.C.A. § 3038.

2. For a discussion of the legislative history and purpose in denying jurisdiction to District Courts over claims by officers, see Brooks v. United States, D.C.E.D.N.Y. 1939, 33 F.Supp. 68, 70 where the court noted that:

"If anything the history would point to an intent to localize all salary suits in the Court of Claims, whether they be suits of officers or employees. However, by limiting the excluded class to 'officers of the United States', Congress evidenced the bounds of its intent in this direction."

See, also, Surowitz v. United States, D.C.S.D.N.Y.1948, 80 F.Supp. 716, 718.

3. Such statute reads as follows:

"* * * That, notwithstanding any lapse of time or statute of limitations, and notwithstanding section 1346(d) (2) of Title 28, United States Code, the United States district courts shall have jurisdiction of all civil actions or claims to recover fees, salary, or compensation for official services of employees of the United States which were filed prior to October 31, 1951, and were thereafter dismissed for want of jurisdiction as a result of the amendment made to such section by section 50(b) of the Act entitled 'An Act to amend certain titles of the

1956, restored jurisdiction to the District Courts over all civil actions or claims to recover fees, salary, or compensation for official services of employees of the United States which were filed prior to October 31, 1951, and on motion of plaintiffs' counsel, this action was reinstated on June 21, 1956.

During a trial held on April 30, 1957, and May 1, 1957, defendant moved to dismiss the complaint on the grounds (A) that the court is without jurisdiction, and (B) that plaintiffs were properly classified for the period in suit as intermittently or irregularly employed under the terms of 50 U.S.C.A.Appendix, §§ 1401–1415.

A. Plaintiffs are "employees of the United States" as those words are used in Public Law 562 and are not "officers of the United States."

■ Many of the numerous cases deciding which individuals on the Government payroll are "officers" and which are "employees" are difficult to reconcile.[4] However, the United States Supreme Court has emphasized in its most recent case[5] on the subject that the "manner in which Congress has specifically provided for" the following three attributes of the position is the determining factor:

   a. The creation of the position.
   b. The duties of the position.
   c. The appointment to the position.

■ In this case, Findings of Fact Nos. 2 and 3 disclose that a General had been delegated the authority to create and fill these positions, subject to the right of the Civilian Personnel Division of the War Department to assure compliance with certain policies, standards and procedures. The act of Congress under which this delegation of power of appointment was issued by the Secretary of War applied to independent establishments as well as to executive departments. Plaintiffs were actually hired by, or under the direction of, an Army officer operating under Civil Service standards adopted by the War Department (Finding of Fact No. 1). The rules and regulations governing these firefighters (Exhibit P–1) were received in evidence without objection, but there is no proof as to their origin and Con-

---

United States Code, and for other purposes', approved October 31, 1951.

"Such cases which were pending in the district courts or in the courts of appeals on October 31, 1951, and which may have been dismissed by reason of the withdrawal of jurisdiction during their pendency, shall be restored upon petition to the appropriate court within one year after the effective date of this Act."

4. Due to the fact that different statutes are involved in many of the cases deciding whether a particular individual is or is not "an officer" or "an employee," the many cases cited by counsel are not all equally applicable to this factual situation. For example, in United States v. Marcus, 3 Cir., 1948, 166 F.2d 497, 501, the holding was that defendant was "an officer * * * or a person acting for or on behalf of the United States, in any official capacity, * * *" as those terms were used in a criminal statute (at page 501). This language is used at page 503:
"The testimony in the record shows that appellant was Supervisory Investigating Officer in the Newark office of the OPA, his duties being prescribed by law.

The Act provides that the Administrator, the department head, appoint such persons as he deems necessary to carry out his functions and duties. An appointment by the head of a department is thereby shown. The authority for the appointment of an investigating officer is provided for by the Act and placed in the Administrator. * * * Whether it be found that appellant was an officer or a person acting in an official capacity, there is ample proof for both so that the jury's verdict is supported by the evidence."

5. In Burnap v. United States, 1920, 252 U.S. 512, at page 516, 40 S.Ct. 374, at page 376, 64 L.Ed. 692, the court said:
"The distinction between officer and employe in this connection does not rest upon differences in the qualifications necessary to fill the positions or in the character of the service to be performed. Whether the incumbent is an officer or an employe is determined by the manner in which Congress has specifically provided for the creation of the several positions, their duties and appointment thereto."

gress clearly had nothing whatever to do with establishing the duties of plaintiffs. Under the facts in this record, the hearing judge concludes that these plaintiffs were not "inferior officers" whose appointment was vested in the "Heads of Departments," as those terms are used in Article II, Section 2, Clause 2,[6] of the Constitution of the United States.[7] The appointment of "inferior officers" mentioned in the Constitution can only be done by, or with the concurrence or approval of, a "Cabinet Member." See Nishimura Ekiu v. United States, 1892, 142 U.S. 651, 653, 12 S.Ct. 336, 35 L.Ed. 1146.[8] The hearing judge agrees with the conclusion reached in Beal v. United States, 6 Cir., 1950, 182 F. 2d 565, certiorari denied 1950, 340 U.S. 852, 71 S.Ct. 81, 95 L.Ed. 625,[9] which concerned firefighters of the same type as those involved in this case. In that case, it was held that District Courts had jurisdiction of the suit and that the lan-

6. This clause reads as follows:
"* * * the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."

Although this position falls within general language of certain decisions, such as the following from United States v. Hartwell, 1867, 6 Wall. 385, 393, 73 U.S. 385, 393, 18 L.Ed. 830, a head of a department approved the appointment of the clerk in that case and the position was provided for in an appropriation act of Congress:
"An office is a public station, or employment, conferred by the appointment of government. The term embraces the ideas of tenure, duration, emolument, and duties.
"The employment of the defendant was in the public service of the United States. He was appointed pursuant to law, and his compensation was fixed by law. Vacating the office of his superior would not have affected the tenure of his place. His duties were continuing and permanent, not occasional or temporary. They were to be such as his superior in office should prescribe."

In United States v. Mouat, 1888, 124 U.S. 303, at page 307, 8 S.Ct. 505, at page 506, 31 L.Ed. 463, the court used the following language:
"Unless a person in the service of the government, therefore, holds his place by virtue of an appointment by the president, or of one of the courts of justice or heads of departments authorized by law to make such an appointment, he is not, strictly speaking, an officer of the United States."

8. In United States v. Mouat, supra, the court said, 124 U.S. at pages 307–308, 8 S.Ct. at page 507:
"If there were any statute which authorized the head of the navy department to appoint a pay-master's clerk, the technical argument, that the appointment in this case, although actually made by Paymaster Whitehouse, and only approved by Harmony as acting secretary in a formal way, with the approval of a half dozen other officers, might still be considered sufficient to call this an appointment by the head of that department. But there is no statute authorizing the secretary of the navy to appoint a pay-master's clerk, nor is there any act requiring his approval of such an appointment, and the regulations of the navy do not seem to require any such appointment or approval for the holding of that position."
However, there was no attempt at approval or concurrence in the appointments by the Secretary of War in this case, and Regulations "M" recites that:
"The very rapid increase in the number of civilians required throughout the War Department to prosecute the war effectively demands that personnel be obtained and put to work quickly. This will be facilitated by the establishment of simple procedures for completing personnel actions in the lowest operating echelons practicable, and by the operation of judicious controls to insure the maintenance of uniform standards." (See Exhibit D–25).
There is no contemplated concurrence or approval by the Secretary of War in appointments such as these in this language. Cases decided by the United States Supreme Court before 1900, when the personnel of the Federal Government was relatively small, presented a far different factual situation than that present in this case.

9. The reasoning in support of the holding in the Beal case and the legislative history involved is covered in the brief for William A. Beal et al., Amici Curiae, filed in the Supreme Court of the United States in Bruner v. United States, 1952, 343 U.S. 112, 72 S.Ct. 581, 96 L.Ed. 786. Cf. the brief for the United States filed in the Bruner case.

guage formerly contained in 28 U.S.C.A. § 41(20) was inapplicable. See, also, Cain v. United States, D.C.N.D.Ill.1947, 73 F.Supp. 1019; Martin v. United States, 8 Cir., 1909, 168 F. 198, 203; cf. Brooks v. United States, D.C.E.D.N.Y.1939, 33 F.Supp. 68.

Although the Fifth Circuit Court of Appeals reached a different conclusion in the case of a "civilian firechief" appointed in March 1941 by the local commanding officer acting for the Secretary of War[10] in Bruner v. United States, 5 Cir., 1951, 189 F.2d 255, affirmed on other grounds, 1952, 343 U.S. 112, 72 S.Ct. 581, 96 L.Ed. 786, the hearing judge believes that the Beal case is more applicable to the factual situation presented by this record, since the per curiam decision in the Bruner case relied on Kennedy v. United States, 5 Cir., 1944, 146 F.2d 26, which is clearly distinguishable from the facts involved in this case. The Kennedy case concerned a junior instructor who was appointed with the approval of the Secretary of War, acting pursuant to an Act of Congress which authorized the position to which the instructor was appointed and appropriated funds for the payment of the salary therefor (see footnote 2 at page 28 of 146 F.2d).[11]

### B. Intermittent or Irregular Employees.

■■ From a review of the evidence, it appears clear that plaintiffs were not, within the meaning of the War Overtime Pay Act of 1943 (50 U.S.C.A.Appendix § 1401 ff.), employees "whose hours of duty are intermittent or irregular" or "whose hours of duty are less than full

time." The thorough analysis of this issue in Beal v. United States, supra, 182 F.2d at pages 568–570, fully disposes of the contentions made by the parties herein. Further, plaintiffs herein worked twelve hours daily and were on full-duty status during all of this time, not being considered on an "on-call" status by the officers in charge[12] (see plaintiffs' requested Findings of Fact Nos. 5 and 6, adopted by the court in Finding No. 6). Therefore, the regulations promulgated by the Civil Service Commission (War Overtime Pay Regulations, 4 C.F.R.Cum.Sup. § 8.1, Title 5, Chap. 1, § 20.7) and the Secretary of War (War Department "Orders" H and U; cf. War Department Administrative Memorandum No. W–29), which designate plaintiffs as "intermittent or irregular" employees, are invalid as being beyond the authority granted the President under Joint Resolution 170 (and exercised by him by Executive Order 9289, U.S.Code Cong. Service 1942, p. 1847, 7 F.R. 10897, 3 C.F.R.Cum.Sup. § 1244) and the Civil Service Commission by the War Overtime Pay Act of 1943 to promulgate such necessary and proper regulations as might be required for administration.

■ Plaintiffs' computation of overtime pay (see last four pages attached to plaintiffs' Requests for Findings of Fact) is adopted by the hearing judge for the reasons stated at pages 10 to 13 of their brief and in their supplemental memorandum filed September 30, 1957, which are attached hereto. The trial judge finds that plaintiff Charles Wilson has not sustained the burden of proving, by the fair preponderance of the evi-

---

10. See pages 28 and 29 of the United States Supreme Court Record (Affidavit of Onthank) and pages 5 and 6 of that Record (Findings and Conclusions of lower court).

11. The decision in Owens v. United States, Civil No. 354–M, M.D.Ala., December 12, 1945, cited by defendant and involving firefighters, also relies on Kennedy v. United States, supra, which, as stated above, is far different from this case on the facts.

12. Conn v. United States, 1946, 68 F.Supp. 966, 107 Ct.Cl. 422, relied on by defendant, is distinguishable in that herein plaintiffs' hours of duty were all devoted to actual work. Further, Armour & Co. v. Wantoch, 1944, 323 U.S. 126, 65 S. Ct. 165, 89 L.Ed. 118, and Skidmore v. Swift & Co., 1944, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124, are persuasive that even were plaintiffs to be considered on an "on-call" status, such time spent subject to call should be compensable.

dence, the amount he is entitled to recover, if any. At the trial, the trial judge stated that, if the record proved incomplete as to any plaintiff, he would be given a reasonable time, after entry of Findings of Fact and Conclusions of Law, to supplement the record. By letter of November 6, 1957, the trial judge notified counsel for plaintiffs that the record as to Charles Wilson was inadequate. Under these circumstances, counsel for plaintiffs will be given one month from this date to supplement the record with additional proof on the amount, if any, recoverable by Charles Wilson.

III. Conclusions of Law.

Plaintiffs' requested Conclusions of Law Nos. 1 to 6, inclusive, with the modification that the words "Charles Wilson—$1286.40" are deleted from paragraph 6, are adopted as Conclusions of Law of this court.

All requests for Conclusions of Law which are inconsistent with the foregoing are denied.

Plaintiffs may submit an order for the entry of judgment, in accordance with the foregoing Conclusions of Law, after appropriate notice to defendant.